IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL LOPEZ,<br><br>    Petitioner,<br><br>vs.<br><br>ANTHONY KANE, Warden,<br><br>    Respondent. | No. C 05-1249 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND INSTRUCTIONS TO THE CLERK** |

## INTRODUCTION

Petitioner, a prisoner of the State of California, currently incarcerated at the Correctional Training Facility in Soledad, California, filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms ("BPT") denial of parole during parole suitability proceedings in 2004. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof and Petitioner has filed a traverse. This *pro se* habeas petition is now before the Court for consideration of the merits. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

Petitioner was convicted of second degree murder in Los Angeles County Superior Court in 1991 and was sentenced to fifteen years-to-life. In this habeas action, Petitioner does not challenge his conviction, but instead alleges that his due process rights were violated by the denial of parole during his third parole suitability proceeding

on May 5, 2004. Petitioner received a two year denial of parole at that hearing. Petitioner's minimum parole eligibility date was March 17, 2001.

At the May 5, 2004 hearing, Petitioner appeared with counsel before a BPT panel for his third parole consideration hearing. At the hearing, the Board relied upon the Statement of Facts in the BPT's February, 2004 report regarding Petitioner's commitment offense. Petitioner testified that the statement was an accurate reflection of what happened, and the Court includes that summary here:

> [O]n March 17th of 1991, about 6:52 in the evening, Lopez was driving from Mount Baldy Village on Mount Baldy Road in an erratic manner and there were two other passengers in the car, and a witness to this traffic collision stated that Lopez was swerving all over the road and went through a stop sign at Mount Baldy and Padua traveling at about 45 to 50 miles an hour. Lopez hit the embankment, and the vehicle became airborne, vehicle turned and crashed on its right side. Arturo Cordona was pronounced dead at the scene by paramedics. Lopez's daughter was removed from the rear seat uninjured. Lopez was transported to Pomona Valley Community Hospital where a blood sample was drawn. His blood alcohol was .25 percent. Lopez was booked at LA County Jail.

(*See* Answer, Ex. B at 10:11-26).

The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety. The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, prior criminal and social history, his programming and behavior since commitment, including progress and a new disciplinary finding since Petitioner's last hearing, and a new psychiatric report.

Petitioner challenged the BPT's May 5, 2004 decision in the state superior, appellate and supreme courts. The California Court of Appeal for the Second Appellate District issued the last reasoned opinion denying Petitioner's claims. After the Supreme Court of California summarily denied his final state habeas petition on February 23, 2005, Petitioner filed the instant federal petition for a writ of habeas corpus. The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

**DISCUSSION**

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.  Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's May 5, 2004 decision

3

finding him not suitable for parole, and denying him a subsequent hearing for two years, on the ground that the decision does not comport with due process. Petitioner claims that the BPT's decision is not supported by some evidence in the record, is improperly based on the "static" reason of his commitment offense and that his recent disciplinary finding "DOES NOT qualify as serious misconduct and can not [sic] stand as a basis for denial of parole." *See* Petition at 2 (emphasis in original). Petitioner challenges the BPT's finding that his crime was especially grave or particularly egregious and alleges that the Board's use of the gravity of the crime to justify life imprisonment violates the mandate that parole is the rule, rather than the exception. Petitioner also claims that the BPT possesses an "Anti-Parole Policy" which is systemically biased, in violation of his constitutional rights.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003). Therefore,

4

Respondent's argument that Petitioner has no liberty interest in parole is without merit as it has previously been rejected by the United States Court of Appeals for the Ninth Circuit in *Sass*.

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." *Morales v. California Dep't of Corrections*, 16 F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 499 (1995). In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole. The panel concluded that Petitioner "is not yet suitable for parole and would pose an unreasonable risk of danger to society or a

threat to public safety if released from prison." May 5, 2005 Hearing Transcript at 58 (Answer Ex. B at 58:11-13). The panel explained that it found that the offense involved "multiple victims" and that the "offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering in that regardless of understanding what the consequences may have been for drunk driving, the prisoner went ahead and drank to the point of having a very, very high blood alcohol level." *Id.* at 58:14-23. The panel also found that Petitioner had "an escalating pattern of criminal conduct in that he had three previous drunk driving arrests prior to the commitment offense." *Id.* at 59:9-12. Petitioner's prior drunk driving arrests were in 1983, 1986, and in 1987. The panel further found that Petitioner had

> failed previous grants of probation, and he failed to profit from society's previous attempts to correct his criminality, and those attempts included county jail, adult probation, and they also included court-ordered treatment program as a result of his probation, and he had attended three different programs graduating from all of them and still continued to drink.

*Id.* at 59:14-21.

The panel found that Petitioner had not "sufficiently participated in beneficial self-help and therapy programs." *Id.* at 60:2-4. The panel also noted that Petitioner had one serious disciplinary finding since his last hearing that was on July 10, 2003, involving lewd conduct exposed to public view for which he was assessed 60 days credit forfeiture. *Id.* at 60:4-8. The panel found that Petitioner had excellent parole plans and commended Petitioner for all of the positive things he has done while in prison, including positive work assignments, participation in AA, some volunteer efforts, and participation in education and prison programs. *Id.* at 60:23-61:17.

The panel found, however, that "these positive aspects of his behavior do not outweigh his factors for unsuitability." *Id.* at 61:17-19. The panel told Petitioner that the parole denial was for two years for the same reasons and because he had "recently committed a serious disciplinary violation. . .. Therefore, a longer period of observation and evaluation of the prisoner is required before the Board should find the prisoner

6

suitable for parole. *Id.* at 62:20-25. Petitioner was advised to become and remain disciplinary free and was informed that the fact that the disciplinary infraction and the drunk driving murder commitment offense both involved lapses of judgment "hurt you." *Id.* at 62:25-64:1.

The state superior court and the state appellate upheld the decision of the BPT and the California Supreme Court summarily affirmed. The California Court of Appeal for the Second Appellate District reviewed the evidence relied on by the panel and determined that its decision was supported by some evidence:

> Review of whether a parole denial comports with the requirements of due process of law raises the sole question of "whether some evidence in the record before the Board supports the decision to deny parole. . . ." (*In re Rosenkrantz* (2002) 29 Cal. 4th 616, 658.)
>
> We have independently reviewed the record before the Board, summarized above, and conclude "some evidence" supports the Board's denial of parole. . . .Lopez had commenced earnest participation in self-help programs relatively recently and he committed a serious disciplinary violation on July 10, 2003, which demonstrated a continuing lack of sufficient self-control to avoid the use of alcohol if released. Because return to the use of alcohol was the single most single most significant risk factor Lopez faced, there was some evidence before the Board that supported its finding Lopez presented an unreasonable danger to society if released and required a longer period of observation and evaluation before Lopez was suitable for parole. *In re Rosenkrantz, supra,* 29 Cal.4th at p. 658.)

*In re Raul Lopez*, No. B-178930, slip op. at *5 (Cal. Ct. App. Nov. 24, 2004) (Answer Ex. G).

The state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The BPT's May 5, 2004 decision to deny petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability. *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal

7

history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under *Hill* is simply "whether there is *any* evidence in the record that could support the conclusion reached by the [BPT]." *Hill*, 474 U.S. at 455-56 (emphasis added). In this case, there is evidence that the crime involved multiple victims (the decedent, a friend of Petitioner's, as well as his daughter and himself), which under California law suffices to show that the crime was conducted in a cruel manner. Petitioner also had an escalating pattern of criminal conduct, in that he had committed three prior offenses involving drinking and driving prior to the murder conviction and Petitioner had recently committed a serious disciplinary infraction, involving an error in judgment. *Cf.* Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). It is not up to this Court to "reweigh the evidence." *Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994).

However, this Court finds no merit in Petitioner's argument that the disciplinary finding less than one year before the hearing does not constitute serious misconduct and cannot be used to support the finding of unsuitability, given that it reflects upon Petitioner's ability to conform his behavior to that which is expected of him. This Court finds no error in the state court's determination that there was some evidence before the BPT that Petitioner poses an unreasonable danger to society if released on parole based on the disciplinary infraction which demonstrated his continuing lack of sufficient self-control to avoid the use of alcohol if released.

Petitioner further argues that the BPT possesses an "Anti-Parole Policy" that is biased and violates his constitutional rights. Neither of the state courts to consider Petitioner's claims explicitly ruled on this claim. Therefore, this Court now conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *Plascencia v. Alameda*, 467 F.3d 1190, 1198 (9th Cir. 2006).

Petitioner has set forth no evidentiary support for his bias claim. But even if he

had, there is no evidence in the record indicating that this alleged bias affected the BPT's decision or served as the basis for denying Petitioner parole. To the contrary, the transcript from Petitioner's May 5, 2004 parole hearing demonstrates that he received an individualized assessment of his potential parole suitability. Petitioner's reliance on the high percentage of parole denials for life inmates provides no proof of the BPT's alleged bias against parole. *Cf. California Dept. of Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing that 90 percent of all California inmates are found unsuitable for parole as evidence that deferring annual parole suitability hearings was lawful and reasonable) . The state courts' rejection of Petitioner's claims cannot be said to be objectively unreasonable. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 409.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. Respondent's motion is GRANTED and the Clerk shall dismiss the Governor and BPT as Respondents and substitute Warden Anthony Kane as the proper Respondent in this action.[2] The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: January 8, 2008

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

---

[2] *See Brittingham v. United States,* 982 F.2d 378, 379 (9th Cir. 1992).

LOPEZ,

    Plaintiff,

 v.

SCHWARZENEGGER et al,

    Defendant.

Case Number: CV05-01249 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 8, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Elizabeth S. Kim
State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Raul Lopez
H-01862
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Dated: January 8, 2008

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk